UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

ALLEN RAY BLEVINS, individually and on
Behalf of all other similarly situated.

    Plaintiff,
v.                                               CASE NO.: 6:19-cv-3121

TELETECH HOLDINGS, INC. d/b/a TTEC,

    Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1. The plaintiff, Allen Ray Blevins ("Plaintiff" or "Mr. Blevins"), individually and on behalf of all others similarly situated, alleges defendant, TeleTech Holdings, Inc. d/b/a TTEC ("Defendant" or "TTEC"), sent automated text messages to him numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

## INTRODUCTION

2. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports.org/cro/magazine/2015/07/rage-against-robocalls/index.htm.[1] "Robocalls" are the #1 consumer complaint in America today, and Defendant's conduct adds to the growing problem.

3. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy, in part, by prohibiting robocalls without prior express consent.

---

[1] A text message qualifies as a call under the TCPA. *See Layden v. Adams Auto Corp.*, 2018 U.S.Dist.LEXIS 79792, at *4 (W.D.Mo. May 11, 2018), citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

4. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices – for example, computerized calls to private homes. Congress enacted the TCPA to prevent real harm and found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also, Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("The Act bans certain practices invasive of privacy[.]").

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These types of damages are the same shared by the Plaintiff and the class members.

2

7. The TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers" a/k/a "robodialers." Specifically, the plain language of § 227(b)(1)(A)(iii) of the TCPA prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

8. On January 4, 2008, the FCC released a Declaratory Ruling confirming that automated or prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See* In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 1 (Jan. 4, 2008) ("2008 FCC Ruling"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at ¶¶ 9-10.

## JURISDICTION AND VENUE

9. Jurisdiction is proper as Plaintiff seeks redress under a federal statute, and thus this Court has jurisdiction as this matter involves questions of federal law.

10. Venue is proper in the United States District Court for the Western District of Missouri because TTEC:

    (a)    is authorized to conduct business in this district and has intentionally availed itself of the laws by conducting business in this district;

    (b)    does substantial business within this district; and,

    (c)    Plaintiff was harmed by Defendant's conduct within this judicial district.

## FACTUAL ALLEGATIONS

11. Upon information and belief, TTEC is a business process outsourcing company, and is is a "person" as defined by *47 U.S.C. § 153 (39)*.

12. Plaintiff is a natural person and citizen of the State of Missouri, residing in Springfield, Missouri, and is is a "person" as defined by *47 U.S.C. § 153 (39)*.

13. Plaintiff is the regular user and carrier of the cellular telephone number ending in "8161".

14. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B*., 746 F. 3d 1242 (11th Cir. 2014).

15. Upon information and belief, Defendant is a corporation with its principal place of business in Englewood, Colorado, and conducts business in the State of Missouri.

16. On July 2, 2016, Plaintiff received an automated text message to his cellular telephone ending in "8161", from the Defendant's short message script ("SMS") code 667-10.

17. On April 9, 2018, at approximately 10:32 AM, Plaintiff received another text message from the Defendant, which read as follows:

> (TTEC): API: Were in need of extra hours today from 8AM-5PM. Kindly reach out to your TL for signing up.

18. In response to the April 9, 2018 message, Plaintiff sent a "STOP" message, at approximately 12:15PM to "opt out" from receiving further text messages.

19. By texting "STOP" Plaintiff withdrew any consent Defendant may have believed it had to send automated text messages to Plaintiff's cellular telephone number.

20. There is no question Defendant received an understood this revocation of consent as the following automated confirmation was almost immediately sent to Plaintiff's cell phone:

4

> Teletech Alerts: You have opted out and will no longer receive messages. 1-866-835-3832

21. Despite revoking his consent, should consent have existed in the first instance, Plaintiff continued to receive unwanted automated text messages from Defendant.

22. Plaintiff received another automated text message from the Defendant on September 27, 2018.

23. After receiving this text message, the Plaintiff tried unsuccessfully to reach the Defendant by calling the toll-free number listed in some of the text messages, and After several minutes of trying to be connected to a representative, Plaintiff grew frusturated and hung up.

24. Each text message that Defendant sent to Plaintiff's cellular telephone after April 9, 2018 was made without Plaintiff's prior express consent.

25. To date, Plaintiff continues to receive text messages from the Defendant.

26. Since April 9, 2018, Defendant has sent twenty-seven automated text messages to Plaintiff.

27. Upon information and belief, Defendant sent the text messages to Plaintiff's cellular telephone ending in 8161 using automated dialing equipment, which has the capacity to store or produce telephone numbers to be texted, without human intervention, using a random or sequential number generator; and to dial such numbers, as specified by 47 U.S.C § 227(a)(1) (an "ATDS".

28. Upon information and belief, the automated dialing equipment used to send the text messages also has the capacity to send text messages automatically to telephone numbers stored as a list or in a database.

29. Upon information and belief, each SMS text message that Defendant sent to Plaintiff's cellular telephone in the last four years was made using an ATDS.

5

30. By effectuating these unwanted text messages using an SMS, Defendant caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

31. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, and intruded upon Plaintiff's seclusion.

32. Defendant's text messages harmed Plaintiff by wasting his time, trespassing on his phone, invading his privacy as well as causing aggravation and inconvenience.

33. Defendant's text messages harmed Plaintiff by depleting the battery life on his cellular telephone.

34. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the class.

## COUNT I
**(Negligent Violation of the TCPA)**

35. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. This claim is for violation of the TCPA by Defendant.

37. The SMS messages from Defendant to Plaintiff's cellular telephone number were made using an ATDS.

38. Defendant placed SMS messages to Plaintiff at a telephone number assigned to a cellular telephone service.

39. The messages sent by Defendant to Plaintiff were not placed for emergency purposes, as defined by TCPA § 227(b)(1)(A)(i).

40. Defendant sent unsoliciated text messages to the wireless telephone number of Plaintiff and the other members of the class using a equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

41. At the time Defendant sent the text messages at issue, Defendant did not have the express consent to do so.

42. Defendant has therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system […]".

43. As a result of Defendant's illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), and are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

44. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## COUNT II
**(Willful or Knowing Violation of the TCPA)**

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. This claim is for a willful or knowing violation of the TCPA by Defendant.

47. The SMS messages from Defendant to Plaintiff's cellular telephone number were made using an ATDS.

48. Defendant placed SMS messages to Plaintiff at a telephone number assigned to a cellular telephone service.

49. The messages sent by Defendant to Plaintiff were not placed for emergency purposes, as defined by TCPA § 227(b)(1)(A)(i).

50. Defendant sent unsoliciated text messages to the wireless telephone number of Plaintiff and the other members of the class using a equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

51. At the time Defendant sent the text messages at issue, Defendant did not have the express consent to do so.

52. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

53. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff and each member of the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## CLASS ACTION ALLEGATIONS

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

57. Plaintiff represents, and is a member of, the Class, consisting of:

> All persons within the United States who were sent any non-emergency text message from Defendant or its agent/s and/or

employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system, within the four years prior to the filing of the Complaint.

58. Plaintiff also represents, and is a member of, the Subclass, consisting of:

> All persons within the United States who were sent any non-emergency text message from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system, within the four years prior to the filing of the Complaint, after that person had instructed Defendant or its agent/s or employee/s to stop texting that telephone number.

59. Plaintiff represents and is a member of the Class and Subclass. Excluded from the Class and each Subclass are Defendant and any entities in which Defendant has a controlling interest, Defendant's employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

60. Plaintiff is presently unaware of the exact number of members in the Class, but based upon the size and scope of Defendant's business, Plaintiff reasonably believes that the Class members number, at a minimum, in the thousands.

61. Plaintiff is presently unaware of the exact number of members in the Subclass, but based upon the size and scope of Defendant's business, Plaintiff reasonably believes that the Class members number, at a minimum, in the thousands.

62. Plaintiff and all members of the Class and Subclass have been harmed by Defendant's actions.

63. Plaintiff and the members of the Class and Subclass have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct.

64. The joinder of all Class and Subclass members is impractical due to the size and relatively modest value of each individual claim.

65. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The Class and subclass can be easily identified through records maintained by Defendant and/or its agents.

66. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and Subclass and it expressly is not intended to request any recovery for personal injury and claims related thereto.

67. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

68. There are question of law and fact common to the members of the Class and Subclass, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

   a. Whether the system used to send the text messages was an ATDS;

   b. Whether Defendant engaged in a pattern of using an ATDS to send text messages to cellular telephone numbers without the prior express consent of the called party;

   c. Whether Defendant used an ATDS to send text messages to cellular telephone numbers after the individual had instructed Defendant to stop contacting the phone number;

   d. Whether Defendant's conduct was willful or knowing;

   e. Whether Defendant's actions violated the TCPA; and,

   f. Whether Plaintiff and the members of the Class and Subclass are entitled to injunctive relief prohibiting further unlawful telephone calls.

69. As a person who received at least one text messages that was sent using an ATDS without prior express consent, and after a revocation request, , Plaintiff asserts claims that are typical of the members of the Class and Subclass.

70. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and Plaintiff does not have an interest that is antagonistic to any member of the Class or any Subclass.

71. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

72. A class action is the superior method for the fair and efficient adjudication of this controversy.

73. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small.

74. Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

75. Defendant has acted on grounds generally applicable to the Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and Subclass as a whole appropriate.

76. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of him, the Class and the Subclass, and against Defendant, for:

(a) A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

(b) A declaration that Defendant used an ATDS to send messages to Plaintiff;

(c) An injunction requiring Defendant not to call any numbers after a request to cease communications to ensure that Plaintiff and the members of the Class and Subclass are not called in the future without the requisite consent;

(d) An injunction requiring Defendant to file quarterly reports of third party audits with the Court on their system and procedures not to call any numbers after a request to cease communications to ensure that Plaintiff is not messaged in the future;

(e) An award of statutory damages for Plaintiff and each Class and Subclass member in the amount of $500.00 for each and every message that violated the TCPA;

(f) An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class and Subclass member for each and every message that violated the TCPA;

(g) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and each Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class and each Subclass;

(h) Prejudgment interest;

(i) An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

(j) Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable, pursuant to the Seventh Amendment to the Constitution of the United States of America.

Respectfully submitted,

RAY ALLEN BLEVIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*/s/D. Todd Matthewss*
**D Todd Matthews, Esq.**
MO SBN: 52502
GORI JULIAN & ASSOCIATES, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone (618) 659-9833
todd@gorijulianlaw.com

**Amanda J. Allen, Esquire**
Florida Bar No.: 98228(*Pro Hac Vice To Be Filed*)
William "Billy" Peerce Howard, Esquire
Florida Bar No.: 010330
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Amanda@TheConsumerProtectionFirm.com
Shenia@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (CA SBN: 249203)
ak@kazlg.com
*Pro Hac Vice To Be Filed*
245 Fischer Avenue, Suite D1
Costs Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
*Attorneys for Plaintiffs*