# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLEN RAY BLEVINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-03121-CV-S-DPR |
| | ) | |
| TELETECH HOLDINGS, INC. d/b/a | ) | |
| TTEC | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Compel Individual Arbitration. (Doc. 13). Defendant Teletech Holdings, Inc. d/b/a TTEC ("TTEC") moves the Court to enter an order compelling arbitration on an individual basis and dismissing the complaint in its entirety or, in the alternative, staying the proceedings pending the completion of arbitration. Plaintiff Allen Ray Blevins ("Blevins") opposes the motion. For the foregoing reasons, the Court orders that the motion be granted to the extent it seeks to compel arbitration and stay these proceedings.

## I. Background

Blevins was hired by TTEC as a customer service representative on July 3, 2012. (Doc. 14-1 at 3). TTEC's principal place of business is Englewood, Colorado, and Blevins is a citizen of Missouri, residing in Springfield. (Doc. 1 at 4; *see* Doc. 14 at 2, n.1). Blevins worked at one of the company's customer care contact centers in Missouri. (*See* Docs. 14-1 at 2, 15-1 at 1). As part of the onboarding process, Blevins confirmed his acceptance of the company's mandatory Arbitration Agreement (the "agreement"), (doc. 14-2), by clicking the "Accept" button after

having the opportunity to read the agreement in its electronic format.[1]  (*See* Docs. 14-1, 14-3). Blevins could have chosen to "Decline" the agreement if he wished not to accept its terms, but he did not.  (Doc. 14-1).  The agreement provides, in relevant part, the following:

AGREEMENT

. . .

**1.0  Agreement to Arbitrate**

**1.1**  Except as provided otherwise in this Agreement, any disputes arising out of or relating to Employee's employment with TeleTech or the termination thereof, are covered by this Agreement.

**1.2**  Except to the extent claims are excluded from the coverage of this Agreement, the Parties agree to arbitrate all disputes arising out of or relating to their employment relationship, and Employee and TeleTech are each knowingly and voluntarily agreeing that arbitration of disputes under this Agreement shall be instead of litigating the disputes in a trial before a court or jury, and that they are expressly waiving their respective procedural rights to a jury and/or court trial of all disputes, except as otherwise set forth herein.

**1.3  Class, Collective and Representative Actions**
You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general basis.  Accordingly,
(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable.  In such instances, the class action must be litigated in a civil court of competent jurisdiction.

. . .

**4.1  Disputes Included.**  Except as specifically excluded in this Agreement, this Agreement covers any and all disputes between TeleTech and Employee.  Such disputes by way of example only and are not limited to, [specifically listed disputes] . . . Whether such claims or disputes are subject to arbitration shall be decided by the arbitrator.

. . .

**4.3  Injunctive Relief.**  To the extent permissible by law, a Party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground

---

[1] Blevins does not dispute these facts.  Blevins only states in his Declaration that he has "no independent recollection of being provided, prior to this lawsuit, with the 'Arbitration Agreement.'"  (Doc. 15-1 at 1).  Nevertheless, Blevins does not actually argue the "I do not recall" issue in his opposition.  Rather, Blevins alleges, among other things, that the agreement "was presented on a 'take-it or leave-it' basis" and that TTEC "was the party with vastly superior bargaining power."  (Doc. 15 at 11-12).

> that the award to which that Party may be entitled may be rendered ineffectual without such provisional relief.
>
> . . .
>
> **12.0 Knowing and Voluntary Agreement**[.] The employee understands and agrees that Employee has been advised to consult with an attorney of Employee's own choosing before signing this Agreement and will let the Company know if any changes are requested.

(Doc. 14-2). The agreement also contains a Colorado choice-of-law provision and recognizes that a "court of competent jurisdiction" has the authority to resolve "[d]isputes regarding the validity and enforceability of the Class Action Waiver." *Id.*

On March 27, 2019, Blevins filed a class action complaint, (doc. 1), against TTEC on behalf of himself and "all others similarly situated" alleging the company sent him unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA"). Pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, TTEC responded with its motion to compel individual arbitration based on its arbitration agreement with Blevins. Blevins argues in response he should not be compelled to arbitrate his individual TCPA claims, because (1) the arbitration agreement as a whole is procedurally unconscionable, (2) the agreement's class action waiver is substantively unconscionable, and, (3) even if the agreement is found to be enforceable, his TCPA claims are not within the scope of the agreement. (Doc. 15). Blevins further argues that his original request for injunctive relief should be granted notwithstanding the Court's decision on the aforementioned issues. The Court takes up the arguments below.

**II. Discussion**

The FAA "establishes a liberal federal policy favoring arbitration agreements." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Accordingly, courts must "rigorously" enforce arbitration agreements "according to their terms." *Id.* (citing *Am. Express Co. v. Italian*

*Colors Rest.*, 570 U.S. 228, 233 (2013)). Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In deciding a motion to compel arbitration under the FAA, courts ask "(1) whether the parties entered a valid arbitration agreement, and, (2) if so, whether the parties' particular dispute falls within the scope of the arbitration agreement." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (internal quotes omitted).

### A. Whether There is a Valid and Enforceable Agreement

"State contract law governs whether the parties have entered into a valid arbitration agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016) (citation omitted). The question here is which state's law should apply. In its motion, TTEC points to the agreement's choice of law provision which provides that both parties should "reasonably expect to be and are subject to the laws of Colorado related to this Agreement . . . ." (*See* Doc. 14-2 at 2 under "Recitals"). While Blevins does not explicitly argue that Colorado law should *not* apply, he largely cites Missouri state cases and federal cases applying Missouri law to advance his procedural unconscionability argument. Nevertheless, the Court will not engage in a rigorous conflict-of-laws analysis to determine which law should apply, because the Court finds that the result is the same whether Colorado or Missouri law is applied. *See Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (declining to decide the conflict-of-law question when the outcome would be the same under either state's law).

#### 1. Contract Elements

Under Colorado law, a valid contract exists "when one party makes an offer[,] the other accepts it, and the agreement is supported by consideration." *Sumerel v. Goodyear Tire & Rubber*

*Co.*, 232 P.3d 128, 133 (Colo. App. 2009). Likewise under Missouri law, "[t]he essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (internal quotes omitted).

As set forth in the Background above, offer and acceptance are met here because TTEC provided the arbitration agreement to Blevins, and Blevins "Accept[ed]" its terms. Furthermore, the parties' mutual promises to arbitrate, as well as Blevins' employment, constituted sufficient consideration for the agreement. Therefore, a valid contract was formed unless the agreement is found unconscionable, as Blevins argues.

The unconscionability doctrine, being a "generally applicable contract defense," may be used to invalidate an otherwise enforceable arbitration agreement. *See Epic Systems*, 138 S. Ct. at 1622 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Leonard v. Del. N. Cos. Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017) (citation omitted). Specifically, Blevins argues that the arbitration agreement is unenforceable because the agreement as a whole is *procedurally* unconscionable, and the agreement's class action waiver is *substantively* unconscionable. As noted above, the outcome is the same whether Colorado or Missouri law is applied, and the Court finds that the arbitration agreement is neither procedurally not substantively unconscionable.

### 2. Procedural Unconscionability Under Colorado Law

"In Colorado, for a contract to be unconscionable, it must be both substantively and procedurally unconscionable." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)). The Colorado

5

Supreme Court recognized in *Davis* seven relevant factors to determine whether a contract is unconscionable:

> (1) a standardized agreement executed by parties of unequal bargaining strength; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive unfairness; (6) the relationship of the parties, including factors of assent, unfair surprise and notice; and (7) all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.

712 P.2d at 991 (enumeration added) (internal citations omitted). "The first, second, third, sixth, and seventh factors relate to procedural unconscionability." *Vernon*, 925 F. Supp. 2d at 1195. The fourth and fifth factors relate to substantive unconscionability. *See id.*

As for procedural unconscionability, Blevins claims that, during formation of the agreement seven years ago, TTEC had "vastly superior bargaining power." (Doc. 15 at 11). This argument relates to the first *Davis* factor.

Blevins himself concedes that "mere inequality in bargaining power does not make the contract automatically unenforceable." *Id.* (citing *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir. 2004)). However, Blevins specifically claims the agreement was presented on a "'take-it or leave-it' basis" because it had no "opt-out provision" and because he had "no ability to ask questions, discuss the agreement or negotiate its terms." *Id.* at 12. The Court disagrees. The agreement clearly states in paragraph 12.0, "The employee understands and agrees that Employee has been advised to consult with an attorney of Employee's own choosing before signing this Agreement and will let the Company know if any changes are requested." Assuming Blevins read the agreement, it appears he simply did not attempt to ask any questions or request any changes at the time. Furthermore, Blevins could have chosen to "Decline" the agreement and not opted-in in the first place.

6

Blevins points to the "severally [sic] limited job market," (doc. 15-1 at 1), in Southwest Missouri following the Joplin tornado in 2011 and the fact that he was "desperate for any opportunity to earn a wage," (doc. 15 at 13), as support for his argument that he essentially had no choice but to accept the mandatory arbitration agreement as written. However, these statements are conclusory, and Blevins presents no facts to suggest that his employment was contingent upon his assent to the agreement *as written*. Blevins was given the opportunity to read the agreement and request changes if he desired. Only now does he claim the agreement he entered was unconscionable.

Therefore, while the agreement does appear to be a standardized arbitration agreement sent to all TTEC employees, the Court is not convinced that the agreement was presented on a take-it-or-leave-it basis, as Blevins argues. And because unequal bargaining power alone will not suffice to invalidate the agreement, the Court is hard-pressed to find procedural unconscionability under Colorado law.

### 3. Procedural Unconscionability Under Missouri Law

Missouri law, which Blevins cites for procedural unconscionability, is no more favorable to Blevins. Missouri courts look at the procedural and substantive aspects "together" to determine unconscionability. *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 432-33 (Mo. 2015). Unconscionability, as defined in Missouri, is "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Eaton*, 461 S.W.3d at 432. "Missouri courts have [also] described an unconscionable agreement as one in which 'no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other.'" *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir. 2009) (citations omitted). Common procedural factors

include high pressure sales tactics, unreadable fine print, misrepresentation, and unequal bargaining positions. *Eaton*, 461 S.W.3d at 433 (citation omitted).

Specifically regarding bargaining power, the Missouri Supreme Court has stated that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809-10 (Mo. 2015) (citations omitted); *see also Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. 2012) ("a court should not invalidate an arbitration agreement . . . simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally").

As previously noted, Blevins' only argument on procedural unconscionability is that there was unequal bargaining power at formation. This alone cannot invalidate the arbitration agreement. Likewise, the other common procedural factors identified by Missouri were not present at formation. Blevins does not allege high pressure sales tactics, unreadable fine print, misrepresentation, or any sort of fraud or duress. It certainly cannot be said that the agreement was one in which "no man in his senses and not under delusion would make" or that there was an "inequality so strong, gross, and manifest" that it would be "impossible" for a person not to exclaim its inequality. The arbitration agreement appears to be a reasonable representation of similar agreements in the employment context, which are so frequently enforced by courts and favored by the FAA. Therefore, the agreement is not procedurally unconscionable under Missouri law.

### 4. Substantive Unconscionability

Even if the agreement was found to be procedurally unconscionable, Colorado law would still require it to be substantively unconscionable. Missouri law would also require a showing of substantive unconscionability, given that "[m]ere inequality in bargaining power" is not enough in

8

itself. Blevins' only argument on substantive unconscionability is that the agreement's class action waiver is "so unfairly one-sided and unjustly oppressive to [him]." This argument fails.

Blevins rightly concedes that "the mere presence of a class action waiver [does not render] the agreement unconscionable." (Doc. 15 at 13). Nevertheless, he insists that the class action waiver in this agreement is "unfairly one-sided," and thus substantively unconscionable, because "only employee[s] of Teletech would have an interest in suing Teletech on a class action basis" and not the other way around. *Id.* at 14. In support, Blevins cites a 2004 California appellate court case, which is neither directly on point nor binding here.

The Supreme Court has repeatedly enforced arbitration agreements "according to their terms." *Epic Systems*, 138 S. Ct. at 1621. An agreement with terms providing for individualized proceedings rather than class-wide proceedings is no different. *See id.* at 1619 (holding that federal courts must "enforce . . . terms providing for individualized proceedings"). Likewise, a party may not attack an agreement on unconscionability grounds "just because it requires bilateral arbitration." *Id.* at 1623. In fact, the FAA naturally disfavors *class-wide* arbitration and does not allow its enforcement "without the parties' consent." *See id.*; *see also Concepcion*, 563 U.S. at 348 (concluding that class-wide arbitration is "inconsistent with the FAA" unless "consensual"). Therefore, not only are arbitration agreements that provide for individualized proceedings conscionable, they are the default.

Here, the parties have mutually agreed to individualized arbitration, and such an agreement must be enforced according to its terms. The argument that this particular class action waiver is "unfairly one-sided" is without merit. The agreements in *Epic Systems*, which provided for individualized arbitration of disputes, were between employer and employee, and yet the Supreme Court decided they were enforceable. 138 S. Ct. at 1623; *see also Nguyen v. Impac Mortgage*, No.

9

SA CV 17-0723-DOC, 2018 WL 5880825, at *8 (C.D. Cal. Aug. 23, 2018) ("[T]o the extent Plaintiffs implicitly argue that the class and collection action waivers are unfair, *Epic Systems* precludes that argument"). There is no reason to believe that the employers in *Epic Systems* had any more interest in suing their employees on a class-wide basis than TTEC does now. Therefore, the class action waiver here is not substantively unconscionable.

### B. Whether Plaintiff's Claims are Within the Scope of the Agreement

Having decided there is a valid arbitration agreement, the question is whether Blevins' TCPA claims are within the scope of the arbitration agreement. Although Blevins argues that the question is for this Court to decide, (doc. 15 at 2), the Supreme Court recently and unanimously reaffirmed that threshold questions of "arbitrability" are properly left to the arbitrator when the parties explicitly delegate it to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract"). Here, the agreement provides in paragraph 4.1, "Whether such claims or disputes are subject to arbitration shall be decided by the arbitrator." (Doc. 14-2 at 4). Accordingly, this explicit delegation of the arbitrability question to the arbitrator should be enforced, and the Court "possesses no power to decide the [issue]." *Henry Schein*, 139 S. Ct. at 529.

### C. Injunctive Relief

Blevins argues that, notwithstanding the Court's decision on the issues discussed above, the Court should grant him injunctive relief as originally requested because "the arbitration agreement expressly excludes 'injunctive relief.'" (Doc. 15 at 10). Specifically, Blevins seeks temporary injunctive relief in the form of "an order prohibiting Teletech from sending further

10

unwanted automated text messages to Plaintiff's cell phone." *Id.* The arbitration agreement provides in paragraph 4.3,

> To the extent permissible by law, a Party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that Party may be entitled may be rendered ineffectual without such provisional relief.

(Doc. 14-2 at 4). However, Blevins fails to address the second portion of this provision, which states, "*but only upon the ground* that the award to which that Party may be entitled may be rendered ineffectual without such provisional relief." *Id.* (emphasis added). Therefore, because Blevins does not attempt to explain the portion he omits or why he is nevertheless entitled to such relief notwithstanding the "but only [if]" clause, the Court finds no basis to adjudicate his claim for injunctive relief.[2]

### III. Whether to Stay or Dismiss

Under the FAA, courts are generally required to stay an action pending arbitration, rather than dismiss it. *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). A court may, however, dismiss such an action "where it is clear the entire controversy between the parties will be resolved by arbitration." *See id.* at 769-70 (citation omitted). Here, it is not entirely clear that all issues raised by the parties will be resolved in arbitration, as the arbitrator may decide that Blevins' claims are not subject to the arbitration agreement. Accordingly, the Court will stay the action pending the completion of arbitration.

### IV. Conclusion

For the above stated reasons, the Court finds that a valid arbitration agreement exists between Blevins and TTEC, and the agreement must be enforced according to its terms. As for

---

[2] Presumably, if TTEC continues to send Blevins text messages allegedly in violation of the TCPA, Blevins will be entitled to even more damages as a result.

11

whether Blevins' TCPA claims are subject to arbitration, the arbitrator will decide that issue.

Accordingly,

1. The Motion to Compel Individual Arbitration is **GRANTED**;

2. The Parties are directed to submit this dispute to arbitration in accordance with the Arbitration Agreement;

3. This action is **STAYED** pending the completion of arbitration; and

4. TTEC is directed to file reports with the Court on the status of arbitration every 120 days, beginning on or before November 25, 2019.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: July 22, 2019